**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MARC MINOR, ) | CASE NO. 1:12-CV-1634 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | NANCY A. VECCHIARELLI |
| ) | |
| PATRICK R. DONAHOE, ) | |
| *Postmaster General*, ) | |
| ) | **MEMORANDUM OPINION AND** |
| Defendant. ) | **ORDER** |

This case is before the undersigned United States Magistrate Judge upon the consent of the parties. Before the Court is the motion for summary judgment filed by Defendant, Patrick R. Donahoe ("Defendant") (doc. no. 46), as well as Plaintiff's motion for leave to file a surreply (doc. no. 54).  For the reasons set forth below, Plaintiff's motion for leave to file a sur-reply is DENIED, and Defendant's motion for summary judgment is GRANTED.

## I.  BACKGROUND

### A.  Factual Background

The following facts are not in dispute.  Plaintiff Marc Minor ("Plaintiff") began working for the United States Postal Service ("USPS") in February 1997.  (Deposition of Marc Minor ("Minor Dep.") at 11:23-12:2, Doc. No. 46-2.)  Although Minor was initially a part-time flex letter carrier, in 2000, the USPS hired him as a full-time letter carrier.  (*Id.* at 20:21-21:15.)  As a letter carrier, Plaintiff's responsibilities included "casing" the mail for his route, loading into his delivery truck, and then delivering the mail.  (*Id.* at 24:3-25:17.)  Plaintiff delivered the mail on his route by "park[ing] and loop[ing]," meaning

that he would "drive to a certain street . . . park in front of a certain address and . . . deliver one half of the street and then deliver the other half" before driving to the next parking point.  (*Id.* at 25:20-26:3.)  After Plaintiff parked at a parking point, he would deliver the mail on foot.  (*Id.* at 26:14-20.)

The M-41 Handbook ("M-41") sets forth many of the duties and responsibilities of a letter carrier.  (Minor Dep. at 22:2-23:7; M-41, Minor Dep. Ex. A, Doc. No. 46-3.)  A carrier's general responsibilities include obeying the instructions of managers, and refraining from loud talking and the use of profane language.  (M-41 at 1.)  With respect to motor vehicle accidents in official vehicles, the M-41 requires that a letter carrier who is involved in an accident to use an "Accident Report Kit" located in each vehicle, and to do the following:

> Operators involved in accidents, regardless of the cause or amount of damage, injury or death, shall remain at the scene until they have:
>
> a. Obtained aid and assistance for any injured person.
>
> b. Safeguarded the scene against further accident.
>
> c. Secured and protected the mail.
>
> d. Notify postmaster or his designee.
>
> e. Notified local or State police as required.
>
> f. Provided other drivers or principal parties to the accident the information required using Form 4585, *Postal Driver Accident Information*.
>
> g. Obtained so far as practical the names and addresses of all principals and witnesses, using Form 4588, *Accident Information*.  Operators shall not make any statements admitting personal or postal liability or criminal negligence or attempt to

2

        negotiate an agreement or settlement with anyone.

h.    Recorded the other driver's license or other valid identification and obtained the name and address of the other driver(s) involved.

i.    Complied with local postal instructions.

j.    Used the chalk or crayon (in Accident Report Kit) to mark on the pavement the paths and final locations of each of the vehicles involved.

k.    Completed SF91, *Operator's Report of a Motor Vehicle Accident*. This report may be prepared at the scene of the accident or immediately thereafter and must be submitted, before going off duty on the day of the accident, to the employee's superior. Accidents, regardless of the amount of damage, injury or deaths caused, must be reported on SF91, even though the other principals involved state that no claim will be filed for or against the Postal Service or its employees or even if only postal personnel, equipment, vehicles or property are involved.

(M-41 at 3.)

### 1. Plaintiff's Disciplinary History[1]

In October 2002, Plaintiff received a Notice of Removal from the USPS, informing him that he was being removed from his position for failing to follow instructions, failing to work in a safe manner, and conduct unbecoming a postal employee. (10/11/2002 Disciplinary Letter at 1, Minor Dep. Ex. B, Doc. No. 46-3; Minor Dep. at 56:3-22.) According to the Notice, the disciplinary action arose out of a September 2002 incident in which a USPS supervisor had witnessed Plaintiff driving his

---

[1] Although Plaintiff does not dispute receiving the letters and discipline described herein, at deposition, Plaintiff contended that his supervisors had fabricated each of the incidents that led to the discipline. (Minor Dep. at 77:6-78:2, 256:5-257:13.)

LLV – a postal delivery vehicle – with the driver's side door open and while not wearing his seatbelt.  (10/11/2002 Disciplinary Letter at 1.)  When the supervisor approached Minor at a delivery stop, Minor used profane language and failed to comply with the supervisor's instructions.  (*Id*.)  The Notice reflected that Minor had been subject to prior discipline, including: (1) a 14-day suspension in August 2002 for failing to follow instructions and failing to perform his duties in a safe manner; (2) a letter of warning in November 2001 for failing to follow instructions and conduct unbecoming a postal employee; and (3) a letter of warning in December 2000 for failing to follow instructions. (*Id*.)  Plaintiff's direct supervisor, Denise Willingham, signed the letter, as did Michael Howard, a customer service manager.  (*Id*.)  Plaintiff filed a grievance related to the Notice, and, in May 2003, an arbitrator determined that, although Plaintiff was "guilty as charged," it was appropriate to reduce the discipline to give Plaintiff "one last chance to prove that he can become a cooperative, safe and exemplary employee."  (May 10, 2003 Arbitrator's Decision, EEOC Administrative File at 111, Doc. No. 46-5.)[2]

In March 2007, Plaintiff received a seven-day suspension for conduct unbecoming of a postal employee.  (03/23/2007 Disciplinary Letter, Minor Dep. Ex. C, Doc. No. 46-3; Minor Dep. at 75:6-77:16.)  The letter notifying him of the suspension described an incident in which Plaintiff argued with his immediate supervisor, Kimberly Morris, regarding whether he was scheduled to work, and reflected that Plaintiff caused

---

[2] Although both parties rely on documents contained in the EEOC file in this matter, neither party provides any basis for its authenticity.  However, because neither party challenges the authenticity of the documents themselves – as opposed to the veracity of their contents – this Court will consider the documents contained in the EEOC file.

a scene on the work floor by yelling and screaming and refusing to leave. (03/23/2007 Disciplinary Letter.) The letter indicated that, in determining that a seven-day suspension was appropriate, his supervisors had considered the fact that, one month prior in February 2007, he had received a letter of warning for failing to follow instructions, failing to perform his total job responsibilities, and failing to maintain a regular work schedule. (*Id*) After Plaintiff filed a grievance related to the suspension, it was reduced to a letter of warning. (Minor Dep. at 83:22-84:16.)

In April 2008, Plaintiff received another seven-day suspension for conduct unbecoming of a postal employee, failure to follow instructions, and creating a disturbance on the workroom floor. (04/21/2008 Letter of Discipline, Minor Dep. Ex. D, Doc. No. 46-3; Minor Dep. at 83:10-16.) The letter notifying him of the incident described a March 2008 incident in which Plaintiff argued with his immediate supervisor, Francine Griffith, and then refused to leave the workroom floor until asked to do so by a union steward. (04/21/2008 Disciplinary Letter.) The letter also described April 2008 incidents in which Plaintiff had argued with Griffith, refused to comply with her directions and created a disturbance on the workroom floor. (*Id*.) The letter referenced Plaintiff's March 2007 letter of warning. (*Id*.) USPS Customer Service Manager Darla Brewer, who was the manager for Plaintiff's station, signed the letter. (*Id*.)

On May 5, 2008, Plaintiff received a 14-day suspension for unauthorized extension of office time and failure to follow instructions. (05/08/2008 Disciplinary Letter, Minor Dep. Ex. E., Doc. No. 46-3; Minor Dep. at 109:13-110:4.) The letter notifying him of the suspension described various incidents in April 2008 when Plaintiff

5

refused to comply with the instructions of Brewer, Griffith and another supervisor, Kenneth Ferguson. (05/08/2008 Disciplinary Letter.) The letter referenced Plaintiff's March 2007 letter of warning and April 2008 seven-day suspension. (*Id*.)

On May 28, 2008, Plaintiff received a 14-day suspension for failing to follow instructions. (05/28/2008 Disciplinary Letter, Minor Dep. Ex. F, Doc. No. 46-3; Minor Dep. at 121:11-122:1.) The letter notifying him of the suspension described a May 2008 incident in which Plaintiff was repeatedly insubordinate to Griffith while she was conducting a follow-along inspection of Plaintiff's route. (05/28/2008 Disciplinary Letter.) The letter referenced Plaintiff's discipline from March 2007 and April 2008, and was signed by Griffin and Brewer. (*Id*.) Plaintiff filed a grievance with respect to the May 28, 2008 suspension, and, in July 2008, a dispute resolution team determined that the suspension was issued for cause, but determined that the suspension would be removed from Plaintiff's record if he had no further disciplinary incidents for a 12-month period. (*Id*. at Step B Decision.)

In July 2008, Plaintiff received a 14-day suspension for failure to follow instructions. (07/10/2008 Disciplinary Letter, Minor Dep. Ex. G, Doc. No. 46-3; Minor Dep. at 131:18-132:4.) The letter notifying Plaintiff of the suspension described incidents in May, June and July 2008 during which Plaintiff was insubordinate to Griffith regarding his route and his sick leave, and one occasion in May 2008 when he had used loud and profane language during an altercation with Griffith. (07/10/2008 Disciplinary Letter.) The letter was signed by Griffith, Brewer and USPS Customer Service Manager Willie C. King. (*Id*.) Plaintiff filed a grievance regarding the suspension and, in August 2008, a dispute resolution team determined that the

6

discipline had been issued for cause. (*Id*. at Step B Decision.)

### 2. Plaintiff's 2008 Age Discrimination Claim

In November 2008, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Brewer and Griffin had discriminated against him on the basis of his age. (Case Detail Sheet, EEOC File at 83, Doc. No. 46-5; Minor Dep. at 189:19-190:9.) Specifically, Plaintiff alleged that, in July 2008, after reporting to Brewer and Griffith that he was going to be late returning from his route, they told him that he would need to obtain documentation from a physician regarding his inability to walk at an acceptable pace, and unfavorably compared his pace to the pace of someone who was 16 years younger than he was. (Minor Dep. at 189:23-190:9.) In December 2008, the EEOC dismissed Plaintiff's charge, determining that he had failed to state a claim. (Case Detail Sheet, EEOC File at 83, Doc. No. 46-5; Minor Dep. at 213:23-214:7.)

### 3. Plaintiff's Termination

On November 9, 2009, Plaintiff was involved in a motor vehicle accident while driving his LLV on Euclid Avenue. (Minor Dep. at 154:20-25.) According to his testimony at deposition in this case, Plaintiff sneezed while driving and "took my eye off the road and when I looked up [the other driver] had stopped to make a left-hand turn and I couldn't stop in time." (*Id*. at 158:18-25.) Plaintiff called the station to report the accident, and King told Plaintiff that he was on his way. (*Id*. at 155:1-6; 156:23-24.) Plaintiff was not able to exchange information with the other driver because he left "like maybe two minutes after the accident." (*Id*. at 158:7-13.) According to Plaintiff, after

7

the other driver left, Plaintiff began to grow "concerned why he left." (*Id.* at 159:2-4.) He also noticed that traffic was backing up behind his LLV, so he proceeded down Euclid and turned left onto Burgess. (*Id.* at 159:5-10.) Then, Plaintiff grew more concerned regarding the other driver's decision to leave:

> Got more and more concerned why the guy just left. I mean, most people, they'd be happy that a postal vehicle hit them from behind but he just left. So I got concerned and I went down to another part of my route and I informed Darla Brewer that I had moved.

(*Id.* at 159:19-160:1.) Eventually, King arrived and inspected the LLV. (*Id.* at 160:5-10.)

On December 10, 2009, Plaintiff received a Notice of Removal, notifying him that, effective January 20, 2010, he would be removed from the USPS for "unacceptable conduct/unsafe act [and] insubordination." (12/10/2009 Disciplinary Letter, Minor Dep. Ex. I, Doc. No. 46-3; Minor Dep. at 152:20-153:5.) In addition to referring to Plaintiff's November 9, 2009 automobile accident, the letter also described a November 2, 2009, incident during which Plaintiff called Brewer to report off on sick leave and, when Brewer instructed Plaintiff to provide medical documentation for his absence, Plaintiff called her a "dumbass." (12/10/2009 Letter.)

The letter stated that Plaintiff had violated multiple sections of the M-41, including those concerning actions to be taken in the event of an accident, and the general responsibilities of a letter carrier. (*Id.*) The letter was signed by King and Brewer. (*Id.*) Plaintiff filed a grievance and, in March 2010, an arbitrator determined that Plaintiff had been removed for cause and denied the grievance. (03/30/2010 Arbitrator Decision, EEOC File at 48-62, Doc. No. 46-5.)

8

In March 2010, Plaintiff filed a charge of retaliation with the EEOC, alleging that he had been terminated in retaliation for filing a previous EEOC charge of discrimination. (EEO Investigation Report, EEOC File at 5, Doc. No. 46-5.) In March 2012, after an investigation, the EEOC found in favor of the USPS with respect to Plaintiff's charge of retaliation. (Amended Complaint, Doc. No. 21.)

## B.    Procedural Background

In October 2012, Plaintiff, *pro se*, filed an amended complaint, in which he alleged that his "immediate supervisor was misled by Darla Brewer to issue a letter of removal," and that Brewer had done so in retaliation for Plaintiff filing an age discrimination claim. (Amended Complaint, Doc. No. 21.) On June 28, 2013, Defendant filed a motion for summary judgment. (Doc. No. 46.) In August 2013, after receiving several extensions of time, Plaintiff filed a response in opposition. (Doc. Nos. 51, 52.) Thereafter, Defendant filed his reply in support of his motion for summary judgment. (Doc. No. 53.)[3]

---

[3] On September 6, 2013, Plaintiff filed a motion for leave to file a sur-reply, in which he argued that a sur-reply was necessary in this matter because: (1) Defendant's reply brief contains factual inaccuracies; and (2) Plaintiff wants to distinguish case law cited by Defendant in his reply. (Doc. No. 54). As many courts have observed, sur-replies "are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *In re Enron Corp. Secs.*, 465 F. Supp. 2d 687, 691, n.4 (S.D. Tex. 2006); *see also Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 659 (D. Kan. 1999) ("The court generally grants leave to file a post-reply brief only in extraordinary circumstances after a showing of good cause.") Here, a review of Plaintiff's motion for leave to file a sur-reply, as well as his proposed sur-reply, reveals that Plaintiff has not demonstrated the extraordinary circumstances meriting a sur-reply in this matter. Rather, Plaintiff's proposed sur-reply merely reflects Plaintiff's continued dispute of Defendant's version of the facts in this case, and relies on unauthenticated documents and unsworn statements. Accordingly, Plaintiff's motion for leave to file a sur-reply is hereby DENIED.

## II. LAW & ANALYSIS

### A. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing that the nonmoving party, after adequate time for discovery, fails to show sufficient evidence to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must produce evidence that results in a conflict of material fact to be resolved by a jury. See Cox v. Ky. Dep't of Transp., 53 F.3d 146, 149 (6th Cir. 1995). The court is not required to search the entire record to establish that it is bereft of a genuine issue of material fact. Al-Qudhai'een v. Am. W. Airlines, Inc., 267 F. Supp. 2d 841, 845 (S.D. Ohio 2003) (quoting Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989)). The nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely. Id. (citing In re Morris, 260 F.3d 654, 665 (6th Cir. 2001)).

In reviewing summary judgment motions, a court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Pachla v.

*Saunders Sys., Inc.*, 899 F.2d 496, 498 (6th Cir. 1990). In addition, the Court does not weigh the evidence or make credibility determinations. *Joostberns v. U. Parcel Servs., Inc.*, 166 F. App'x 783, 787 (6th Cir. 2006). The determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to defeat a motion for summary judgment; there must be evidence on which the jury could reasonably find for the nonmoving party. *Id.* Ultimately, the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52.

**B.     Application of Standard**

Courts employ the familiar burden-shifting framework of *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973), in analyzing claims of retaliation in this context. *See Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). Under that framework, a plaintiff must first establish a prima facie case of retaliation by demonstrating that: (1) he engaged in protected activity; (2) the defendant had knowledge of his protected conduct; (3) the defendant took an adverse employment action against him; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Id*. "The burden of establishing a prima facie case in a retaliation case is not onerous, but one easily met. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a nondiscriminatory reason for its actions.  *Mickey,* 516 F.3d at 526.  If the defendant articulates such a reason, the plaintiff must then show that the articulated reason is merely pretext for discrimination.  *Id*.

### 1. Whether Plaintiff Has Established a Prima Facie Case of Retaliation

Defendant disputes neither that Plaintiff engaged in a protected activity – filing the November 2008 EEOC charge – nor that he was subject to an adverse employment action – his December 2009 termination.  However, Defendant contends that Plaintiff has failed to establish a genuine issue of material fact with respect to whether: (1) his supervisor – Willie King, who signed the notice of removal – was aware of Plaintiff's prior EEOC charge at the time of Plaintiff's termination; or (2) there was a causal connection between Plaintiff's protected activity and his termination.

Defendant's first argument is not well taken.  There is evidence in the record that King was, at the time of Plaintiff's termination, unaware that Plaintiff had filed an EEOC charge in November 2008.  (Affidavit of Willie King ("King Aff."), EECO File at 78, Doc. No. 46-5.)  However, the December 2009 Letter of Removal is also signed by Brewer, who, as one of the subject of Plaintiff's 2008 EEOC charge, was aware that he had engaged in protected activity.  (Affidavit of Darla Brewer ("Brewer Aff."), EECO File at 71, Doc. No. 46-5.)  In an affidavit made during the EEOC investigation of Plaintiff's charge of retaliation, Brewer asserts that, while she was aware of the prior EEOC charge, she "had forgotten about it" because "there wasn't a big deal made about it." (*Id*.)  This evidence is sufficient to establish at least a genuine issue of material fact with

respect to whether Plaintiff's supervisors were aware of his prior protected activity at the time they made the decision to terminate him.

The final element of the prima facie case is a closer question in this matter. Generally, in order to demonstrate a causal connection between the protected activity and the adverse employment action, a plaintiff must proffer evidence "sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990). In some cases, the proximity in time between the protected activity and the adverse action may be sufficient to establish a causal connection:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Mickey*, 516 F.3d at 525.

Defendant argues that Plaintiff cannot rely on temporal proximity to establish a causal connection in this case because he filed his first EEOC charge in November 2008 and was not discharged until December 2009, some 13 months later. The Sixth Circuit has concluded that a period of "two to five months" between a protected activity and an adverse employment action is too "tenuous" to create a triable issue on this element. *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999); *see also McDonald v. Ford Motor Co.*, 208 F. Supp. 2d 837, 846 (N.D. Ohio 2002) (characterizing a five-

13

month period of time as "loose temporal proximity" and determining that, absent additional evidence, it was "insufficient to create a triable issue").

In this case, the record reflects that over one year passed between the filing of Plaintiff's November 2008 EEOC charge and his December 2009 termination. This period of time is too long to create, on its own, a triable issue on this element of the prima facie case. However, the record can also be fairly construed to reflect that Brewer – who was the subject of the November 2008 EEOC charge – was not Plaintiff's supervisor for the entire length of time between November 2008 and December 2009. Rather, in her May 2010 affidavit in the EEOC investigation, Brewer stated that she had worked at Plaintiff's station in 2008, but, at the time of the affidavit, had only been back there for 13 months. (Brewer Aff., EECO File at 71, Doc. No. 46-5.) In a supplemental affidavit, Brewer indicated that she had returned to the station in April 2009. (Brewer Aff., EEOC File at 75, Doc. No. 46-5.) Accordingly, her affidavits indicated that Brewer left the station at some point after November 2008 and returned to the station – and to her position as Plaintiff's supervisor – in April 2009, some eight months before his termination.

Given Sixth Circuit case law on this issue, this eight-month period of time is likely too tenuous, on its own, to create a triable issue of fact on this element of the prima facie case. However, the fact that Brewer left the station for some period of time and then returned is relevant because, as Plaintiff notes in his opposition, he did not receive any discipline between November 2008 and his termination in December 2009. Brewer's absence from Plaintiff's station coincided, at least in part, with this period of time. This fact can be interpreted both to support Plaintiff's position and to undermine

14

it.  On one hand, the fact that Plaintiff received no discipline while Brewer was stationed elsewhere could be construed to suggest that the December 2009 termination – after Brewer's return – was motivated by retaliation. On the other hand, the fact that Brewer returned in April 2009 and did not issue Plaintiff any discipline until December 2009 could be construed to suggest that she did not act in retaliation, but, rather, only issued discipline for misconduct that merited it.  However, this Court must construe the evidence in the light most favorable to Plaintiff, and, thus, Brewer's absence – during which Plaintiff received no discipline – combined with her decision to terminate him after she returned to the station, is sufficient to create a genuine issue of material fact with respect to whether there was a causal connection between Plaintiff's protected activity and his December 2009 termination.  Accordingly, Plaintiff has demonstrated a genuine issue of material fact with respect to his prima facie case of retaliation.

### 2.  Whether Plaintiff Can Establish Pretext

Defendant argues that, even if Plaintiff can establish a prima facie case, he was terminated for the legitimate nondiscriminatory reasons set forth in the December 2009 Letter of Removal.  Defendant's burden on this issue is one of production rather than persuasion, *see Mickey*, 516 F.3d at 526, and, in this case, the Letter of Removal is sufficient to establish a legitimate nondiscriminatory reason for Plaintiff's termination.  Accordingly, the burden shifts to Plaintiff to demonstrate that Defendant's proffered reason is pretext for discrimination.  *Id*.  Plaintiff can demonstrate pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged

conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).  Further, Plaintiff must "produce sufficient evidence from which the jury could reasonably reject [Defendant's] explanation and infer that [Defendant] intentionally discriminated against him." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (internal quotation marks and alterations omitted).  Accordingly, Plaintiff must "allege more than a dispute over the facts upon which" the decision to terminate him was based, but, rather, must "put forth evidence that [Defendant] did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Id*. at 493-94 (internal quotation marks and citations omitted).

      Here, Plaintiff's opposition can be construed to raise several arguments for concluding that Defendant's explanation for his termination was pretext for discrimination.  In his opposition, Plaintiff discusses his rationale for moving his LLV from the scene of the accident and failing to obtain information from the other driver.  He asserts that it was necessary to move his vehicle in order to "safeguard the scene," and that the other driver left without giving Plaintiff an opportunity to ask for his identifying information.  Although these explanations for Plaintiff's actions after the automobile accident may be reasonable, they do not undermine the truth of the allegations in the December 2009 Letter of Removal.  By his own testimony at deposition, Plaintiff concedes that he violated several provisions of the manual regarding automobile accidents, including those requiring him to obtain information from the other driver, mark the scene with chalk, and provide the other driver with various forms from the USPS.  Accordingly, this argument is not sufficient to demonstrate pretext.

16

Plaintiff's remaining arguments arise out of Brewer's identification, in her supplemental EEOC affidavit, of other letter carriers who were involved in automobile accidents, and the discipline they received. (Brewer Aff., EEOC File at 75, Doc. No. 46-5.) In her affidavit, Brewer identified five carriers – Pietro Passerell, James Moore, Lamont Williams, Spencer Randle, and Robert McGraw – who had been involved in automobile accidents prior to her April 2009 arrival at the station, and three carriers – including Plaintiff – who had been involved in accidents after April 2009. (*Id*.) Relevant to Plaintiff's arguments, Brewer's affidavit asserted that Moore received no discipline because he was not at fault; that Randle received a letter of warning because he had no previous discipline; and that it was not clear whether McGraw had been disciplined as a result of his accident. (*Id*.)

Of the three carriers whose accidents had occurred after April 2009, two – Plaintiff and Antoine Harris – were removed from their positions. (*Id*.) The third, Jerome Walton, was issued a letter of warning. (*Id*.) According to Brewer, at the time of his accident, Walton had no prior discipline, but had been removed from the USPS in January 2010 "for other infractions." (*Id*.) With respect to Plaintiff, Brewer noted that, at the time of his accident, had already received a seven-day suspension and two 14-day suspensions. (*Id*.)

With respect to those carriers whose accidents occurred after April 2009, Plaintiff argues that neither Harris nor Walton was a "career carrier." He fails to explain, however, the significance of that distinction. Absent some explanation, the fact that these two carriers were "transitional employees" does not suggest that Defendant's

17

proffered reason for terminating Plaintiff was pretextual, particularly considering that Harris received the same discipline as Plaintiff.

With respect to those carriers whose accidents occurred before April 2009, Plaintiff contends that Brewer's affidavit was not accurate.  Specifically, he asserts that: (1) contrary to Brewer's affidavit, Moore was at fault in his accident, as Moore admitted to failing to stop at a stop sign; (2) Randle received a 14-day suspension, rather than a letter of warning; and (3) it is not believable that Brewer could not determine whether McGraw had been disciplined because his accident had occurred in March 2009 and Brewer had obtained Plaintiff's disciplinary records dating back to 2002.[4]  Plaintiff's argument, however, fails to account for the fact that these individuals were disciplined by supervisors other than Brewer, and he fails to explain how, despite this difference, their situations are reasonably compared to his own.  Accordingly, these alleged inaccuracies in Brewer's affidavit are not sufficient to demonstrate pretext in this case.[5]

In sum, Plaintiff's evidence entirely fails to demonstrate that Defendant's proffered reason for terminating him was pretext for retaliation in this case.  Plaintiff's

---

[4] Plaintiff generally supports this argument with unauthenticated evidence, including what purports to be a copy of police report regarding Moore's accident and a copy of a letter regarding Randle's discipline.  However, because Defendant did not object to the lack of authentication of these exhibits, this Court will consider them.

[5] Plaintiff contends that Brewer purposely misrepresented the facts regarding these other carriers in her affidavit, and that she omitted information regarding other carriers that would have supported Plaintiff's case.  He also contends that she terminated Harris in order to be able to demonstrate that another carrier had been removed as a result of an accident.  However, Plaintiff does not support these allegations with anything other than his own self-serving assertions.  Absent evidence, these assertions cannot support Plaintiff's argument that Defendant terminated him in retaliation for his November 2008 EEOC charge.

extensive disciplinary record is evident from the record. His own testimony confirms that he violated USPS procedures regarding automobile accidents. Plaintiff offers no evidence that challenges this explanation for his discharge. Accordingly, Plaintiff has failed to carry his burden of demonstrating pretext in this matter, and, thus, Defendant is entitled to summary judgment in this matter.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: September 27, 2013